1

2

3

4

5

6

7

8               **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DANIEL LEE THORNBERRY,              No. 2:17-CV-0953-TLN-DMC-P

12                    Plaintiff,

13          v.                          FINDINGS AND RECOMMENDATIONS

14   J. BAL, et al.,

15                    Defendants.

16

17                 Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the court is plaintiff's motion for injunctive relief.  See ECF

19   No. 64.  Defendants have filed an opposition, see ECF No. 92, and plaintiff has filed a reply, see

20   ECF No. 96.  Also before the court is plaintiff's motion for summary judgment.  See ECF No. 63.

21

22                          **I.  PLAINTIFF'S ALLEGATIONS**

23                 This action proceeds on plaintiff's first amended complaint.  See ECF No. 9.

24   The first amended complaint was determined to be appropriate for service on March 8, 2018.

25   See ECF No. 14.  As outlined in the court's order, plaintiff names the following as defendants:

26   (1) James Chau; (2) C. Smith; (3) M. Bobbala; (4) Michael Felder; and (5) J. Bal. Defendants

27   Chau and Smith are alleged to be current or former prison medical professionals at Mule Creek

28   State Prison. Defendants Bobbala and Felder are alleged to be current or former supervising

                                                 1

1  prison medical professionals at California State Prison - Sacramento. Defendant Bal is alleged to

2  be the current or former Deputy Medical Executive for the California Department of Corrections

3  and Rehabilitation.  See ECF No. 14, pgs. 1-2.

4          Plaintiff claims that, prior to any examination, defendant Chau discontinued

5  plaintiff's prescribed pain medication and instead prescribed a "replacement" which plaintiff says

6  is not as effective in controlling his pain. Plaintiff further alleges that, nearly a month later and

7  only after he had filed a medical grievance, was he actually examined by defendant Chau, who

8  continued the replacement prescription. According to plaintiff, defendant Chau informed plaintiff

9  that he could not prescribe plaintiff's prior medication "due to a new 'state-wide push' to

10  discontinue certain non-formulary medications." Plaintiff states that, when asked whether another

11  medication similar to his prior medication was available, defendant Chau "became hostile and

12  verbally abusive," and told plaintiff: "I don't have to make you comfortable; I only have to make

13  you functional. I give you constitutional care. If you can walk, that's all I'm concerned with."

14  According to plaintiff, when he asked whether defendant Chau could review his medical records

15  in order to determine whether other treatment options for pain are available, defendant Chau told

16  plaintiff: "I've already read your file. You need to go now."  See id. at 2.

17          Plaintiff filed an inmate grievance concerning his pain medication and the matter

18  was reviewed by a different prison doctor, defendant Smith, who continued the course of

19  treatment prescribed by defendant Chau. According to plaintiff, defendant Smith told him that the

20  continuation of defendant Chau's treatment plan was "centered around a so-called state-wide

21  policy both actual and implied that seeks to 'take as many inmates off certain medications as

22  possible and to stop prescribing them.'" Plaintiff states that, after describing his ongoing pain,

23  defendant Smith replied: "My hands are tied." According to plaintiff, regarding the approved

24  medications defendant Smith also said: "You know, it's tough, many of these medications interact

25  negatively with the lithium you take." When plaintiff rejected various other options for pain

26  medications, many of which were medications primarily intended to treat psychological

27  symptoms, because he had been told by his treating psychiatrist to avoid such medications,

28  defendant Smith allegedly replied: "Those are your options, take them or leave them." Ultimately,

plaintiff agreed to take Effexor for his pain even though the medication was primarily intended for treatment of depression. Plaintiff states that Effexor caused side effects which made him feel as if he had taken "pharmaceutical cocaine." See ECF No. 14, pgs. 2-3.

Plaintiff states that he was then transferred to California State Prison - Sacramento where he was examined by Dr. Wadell. Plaintiff's primary complaint was chronic pain. Dr. Wadell prescribed Tylenol with codeine twice per day, a back brace, and a cane. Plaintiff asked if he could be given either Gabapentin or Lyrica because those had been more effective in the past. According to plaintiff, Dr. Wadell stated that he would prefer treating plaintiff with Gabapentin but that defendant Bobbala "denied NFRs for both Gabapentin and Lyrica and most all narcotics – all medications used to treat chronic pain." Plaintiff claims that Dr. Wadell also told him that this policy to deny narcotic pain medication had been promulgated by defendant Bal. See id. at 3.

According to plaintiff, he asked defendant Felder why "CME Bobbala consistently denied all NFRs related to pain medications." Plaintiff states that Felder said "it was his understanding the head office had changed the policy related to pain medication and the criteria used in approving its use." See id. at 3.

## II. PROCEDURAL HISTORY

Defendants filed their answer to plaintiff's first amended complaint on June 26, 2018. See ECF No. 23. On July 11, 2018, the court issued an initial scheduling order permitting the parties to conduct discovery through January 21, 2019. See ECF No. 25. Dispositive motions were due within 90 days of the close of discovery. See id.

On August 23, 2018, the court provided plaintiff with blank subpoena forms. See ECF No. 33. From September 2018 to November 2018, plaintiff filed a series of motions related to discovery. See ECF Nos. 39, 41, 42, 43, 44, 46, 47, 48, and 49. On January 18, 2019, defendants filed a motion to modify the scheduling order. See ECF No. 51. On March 8, 2019, plaintiff filed a motion for an extension of time to file dispositive motions. See ECF No. 60. Plaintiff filed the current motion for summary judgment on April 22, 2019, see ECF No. 63, and

motion for injunctive relief on April 29, 2019, <u>see</u> ECF No. 64.

On June 5, 2019, the court resolved the various discovery and scheduling motions pending at the time and reopened discovery for a period of 120 days from the date of the order. <u>See</u> ECF No. 69. On August 8, 2019, and November 4, 2019, plaintiff filed additional motions related to discovery. <u>See</u> ECF Nos. 78 and 84. On February 13, 2020, the court resolved these motions, reopened discovery for an additional 60 days from the date of the order, and directed dispositive motions to be filed by July 27, 2020. <u>See</u> ECF No. 97.

## III. DISCUSSION

### A.    <u>Motion for Injunctive Relief</u>

The legal principles applicable to requests for injunctive relief, such as a temporary restraining order or preliminary injunction, are well established. To prevail, the moving party must show that irreparable injury is likely in the absence of an injunction. <u>See</u> <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing <u>Winter v. Natural Res. Def. Council, Inc.</u>, 129 S.Ct. 365 (2008)). To the extent prior Ninth Circuit cases suggest a lesser standard by focusing solely on the possibility of irreparable harm, such cases are "no longer controlling, or even viable." <u>Am. Trucking Ass'ns, Inc. v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir. 2009). Under <u>Winter</u>, the proper test requires a party to demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public interest. <u>See</u> <u>Stormans</u>, 586 F.3d at 1127 (citing <u>Winter</u>, 129 S.Ct. at 374). The court cannot, however, issue an order against individuals who are not parties to the action. <u>See</u> <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 112 (1969). Moreover, if an inmate is seeking injunctive relief with respect to conditions of confinement, the prisoner's transfer to another prison renders the request for injunctive relief moot, unless there is some evidence of an expectation of being transferred back. <u>See</u> <u>Prieser v. Newkirk</u>, 422 U.S. 395, 402-03 (1975); <u>Johnson v. Moore</u>, 948 F.3d 517, 519 (9th Cir. 1991) (per curiam).

/ / /

Plaintiff seeks an order:

> . . .enjoining defendants, their successors in office, agents and employees, and all other persons acting in concert and participation with them, from requiring any primary care provider treating any CDCR prisoner including but not limited to the Plaintiff to first seek administrative approval prior to the prescription of any medication or making any medication available to the Plaintiff or any other prisoner incarcerated in any CDCR prison or correctional facility he/she considers necessary to adequately treat any medical condition considered serious . . . and/or to alleviate chronic pain from a medical or other prior administrator acting in a supervisory capacity in direct or ultimate authority over any primary care provider whose responsibility is to provide primary medical care directly to any inmate-patient incarcerated in any correctional facility within the jurisdiction of the California Department of Corrections and Rehabilitation.

ECF No. 64, pgs. 2-3.

In opposition, defendants argue: (1) plaintiff's motion is moot because he is currently receiving the medications he claims were improperly discontinued; and (2) plaintiff cannot obtain injunctive relief on behalf of other inmates. See ECF No. 92. The court agrees.

As defendants correctly note, injunctive relief is forward-looking and is intended to remedy future injury. See Orantes-Hernandez v. Thornbburgh, 919 F.2d 549 (9th Cir. 1990). In this case, plaintiff asserts the possibility of future injury arising from the conduct which forms the basis of his underlying allegations – denial of certain pain medications, namely Gabapentin and Lyrica. According to defendants:

> Here, Plaintiff's claims are based on Defendant's alleged actions denying Plaintiff his preferred pain medication, Gabapentin or Lyrica. These alleged instances occurred between 2016 and 2017. However, Plaintiff is currently prescribed one of his preferred medications, Gabatentin, and was recently prescribed Lyrica. (Defendants' Exhibit A, Attachment 1, decl. of B, Pharris, and Plaintiff's medication records.) Thus, Plaintiff cannot demonstrate that the alleged harm which is the basis for this action is continuing, or is likely be repeated. Since the claim is moot, the motion for injunctive relief should be denied. See *Martinez v. Wilson,* 32 F.3d 1415, 1419 (9th Cir, 1994) (A case becomes moot when events overtake the litigation).

ECF No. 92, pg. 4.

Because plaintiff is now being prescribed the medications he claims was improperly denied, there is no longer any potential for irreparable harm. The gravamen of the merits of plaintiff's claims is that he was improperly denied Gabapentin and Lyrica. Given that these medications have now

5

been prescribed, events have indeed overtaken the litigation and plaintiff's currently request for injunctive relief is moot.  See Martinez, 32 F.3d at 1419.

Defendants are also correct that plaintiff, who is a non-attorney proceeding pro se, cannot pursue injunctive relief on behalf of other inmates.  See e.g. McShane v. United States, 366 F.2d 286 (9th Cir. 1966).  Other inmates may be members of the class involved in the Plata v Newsom litigation concerning prison medical conditions.

**B.**     **Motion for Summary Judgment**

Plaintiff seeks summary judgment as to his Eighth Amendment claims against each named defendant.  Given the procedural history outlined above, the court finds that plaintiff's motion is premature and should be re-filed following the final close of discovery.  To the extent the parties are actively engaged in discovery, resolution of plaintiff's motion at this time could deny the parties an opportunity to present the court with their best arguments and evidence in the context of dispositive motions.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.  CONCLUSION**

Based on the foregoing, the undersigned recommends that:

1.      Plaintiff's motion for injunctive relief (ECF No. 64) be denied; and

2.      Plaintiff's motion for summary judgment (ECF No. 63) be denied as premature and without prejudice to renewal following the close of discovery within the time limit for filing dispositive motions set in the court's February 13, 2020, order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 19, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE