# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LEE THORNBERRY, | No.  2:17-CV-0953-TLN-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| KERNAN, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the Court are the parties' respective motions for summary judgment. ECF Nos. 104, 111. The undersigned United States Magistrate Judge resolves Defendants' motion and recommends granting summary judgment in Defendants' favor. The Court thus does not address Plaintiff's motion, which is necessarily mooted by granting summary judgment to Defendants.  The Court concludes that Defendants are entitled to summary judgment generally and does not address Defendants' asserted defense of qualified immunity.

///

///

///

///

///

1

## I. PLAINTIFF'S ALLEGATIONS

**A.  Plaintiff's Factual Allegations:**

Plaintiff is a California state prisoner incarcerated at Mule Creek State Prison (MCSP). ECF No. 9 at 4. Plaintiff names as defendants: (1) James Chau; (2) C. Smith; (3) M. Bobbala; and (4) J. Bal.[1] Id. at 2–3.  Defendants Chau and Smith are prison medical professionals at MCSP. Id. Defendants Bobbala is a supervising prison medical professional at California State Prison–Sacramento (CSP-Sac). Id. Defendant Bal is the current or former Deputy Medical Executive for the California Department of Corrections and Rehabilitation (CDCR). Id. at 3–4.

Plaintiff asserts that, as of 2016, he was taking medication for the treatment of pain associated with neuropathy and a spinal condition. Id. at 4. Plaintiff contends he was taking gabapentin. Id. An MCSP physician renewed Plaintiff's gabapentin prescription when CDCR first transferred Plaintiff to MCSP. Id. Another MCSP physician later prescribed pain medication in addition to the gabapentin. Id. at 4–5.

Nevertheless, after Plaintiff was reassigned to MCSP's Administrative Segregation Unit, Defendant Dr. Chau became Plaintiff's primary physician and, without any examination, discontinued his prescribed pain medications. Id. at 5–6. Nearly a month later, and only after Plaintiff had filed a medical grievance, did Dr. Chau bother to examine him. Id. at 6. Plaintiff described his medical conditions to Dr. Chau, explaining that he was in significant pain and required pain medication to cope. See id. at 7. According to Plaintiff, Dr. Chau stated that he could not prescribe Plaintiff's prior medication "due to a new 'state-wide push' to discontinue certain non-formulary medications." Id. It is unclear whether Plaintiff claims that Dr. Chau discontinued Plaintiff's medication altogether or prescribed a less-effective alternative medication.[2] See id. at 8, 16. In any event, Plaintiff claims that Dr. Chau did not adequately treat his chronic pain in discontinuing his prior medication. See id.

---

[1] Defendant also named Dr. M. Felder as a defendant. The Court, on Plaintiff's motion, has dismissed Dr. Felder from this suit by separate order.

[2] There is some confusion across the parties' submissions and, in particular, Plaintiff's original and first amended complaints as to whether Dr. Chau ordered a replacement medication when he discontinued Plaintiff's pain medication. See, e.g., ECF Nos. 1 at 12; 9 at 6–8; 111-3 at 2. The Court proceeds on the basis of Plaintiff's allegations in the operative first amended complaint.

1    Plaintiff contends that, when he asked Dr. Chau for medication similar to his prior

2 prescription, Dr. Chau was hostile and verbally abusive. Id. Dr. Chau allegedly told Plaintiff: "I

3 don't have to make you comfortable; I only have to make you functional. I give you constitutional

4 care. If you can walk, that's all I'm concerned with." Id. at 7–8. According to Plaintiff, when he

5 asked whether Dr. Chau could review his medical records in order to determine whether other

6 treatment options for pain were available, Dr. Chau told him: "I've already read your file. You need

7 to go now." Id. at 8.

8    Plaintiff filed a grievance seeking review of Dr. Chau's refusal to prescribe

9 alternative pain medication. Id. Defendant Dr. C. Smith, MCSP's Chief Surgeon, reviewed the

10 health care grievance. Id. Dr. Smith denied the grievance and continued Dr. Chau's course of

11 treatment. Id. According to Plaintiff, Dr. Smith stated that the continuation of Dr. Chau's treatment

12 plan was premised on a "so-called state-wide policy both actual and implied that seeks to 'take as

13 many inmates off certain medications as possible and to stop prescribing them.'" Id. at 8–9. Plaintiff

14 states that, after describing his ongoing pain, Dr. Smith replied: "My hands are tied." Id. at 9. Dr.

15 Smith also allegedly said: "You know, it's tough, many of these medications interact negatively

16 with the lithium you take." Id. Dr. Smith then suggested several alternative medications for

17 Plaintiff. Id. Plaintiff rejected many of the suggestions, many of which were psychiatric

18 medications. Id. at 9–10. Plaintiff contends he rejected the medications because his psychiatrist

19 instructed him to avoid such medications. Id. at 10. Dr. Smith allegedly replied: "Those

20 [medications] are your options, take them or leave them." Id. Plaintiff agreed to take Effexor for

21 his pain even though the medication was primarily intended for treatment of depression. Id. Plaintiff

22 states that Effexor caused side effects that made him feel as if he had taken "pharmaceutical

23 cocaine." Id. Plaintiff specifically contends that the prescribed psychiatric medication causes

24 harmful side effects in patients like Plaintiff who have bipolar disorder. Id. at 17.

25    Subsequently, CDCR transferred Plaintiff to CSP-Sac Id. at 11. There, Dr. Wadell

26 examined Plaintiff. Id. Plaintiff complained of his chronic pain. Id. Dr. Wadell prescribed Tylenol

27 with codeine twice per day, a back brace, and a cane. Id. Plaintiff asked if he could be given either

28 gabapentin or Lyrica because those medications had been effective. Id. at 12. Dr. Wadell

3

purportedly stated that he would prefer treating Plaintiff with gabapentin but that Defendant Bobbala "denied [requests] for both gabapentin and Lyrica and most all narcotics – all medications used to treat chronic pain." Id. Plaintiff claims that Dr. Wadell also told him that it was Defendant Bal who had initiated the policy of denying narcotic pain medication. Id. at 13. Plaintiff later claims more explicitly that Defendant Bal is the author of CDCR's policy of denying non-formulary pain medication, leading to Plaintiff's inability to receive effective pain medication. Id. at 18–19.

Plaintiff avers that Defendant Bobbala has direct knowledge of Plaintiff's chronic pain, but nevertheless enforced a policy of denying narcotic pain medication. Id. at 13–14. Bobbala's enforcement, in Plaintiff's view, caused him needless pain. Id. at 14. The policy has allowed primary care physicians to refuse adequate treatment for pain. Id. In turn, the decisions of primary care physicians in denying pain medication also caused Plaintiff needless suffering. Id.

Later, Plaintiff allegedly spoke with Dr. Felder, chief of CSP-Sac's medical department. Id. Plaintiff asked Dr. Felder why "CME Bobbala consistently denied all NFRs related to pain medications." Plaintiff contends that Felder said, "it was his understanding the head office had changed the policy related to pain medication and the criteria used in approving its use." Id. at 15. Plaintiff then asked Dr. Felder if staff could more closely investigate "indiscriminate denial of necessary pain medication indicated for the treatment of [Plaintiff's] medical condition." Id. Dr. Felder allegedly replied that it was not his decision and Plaintiff could take it up with Defendants Bobbala and Bal. Id.

**B.  Plaintiff's Legal Claims:**

Plaintiff variously contends Defendants violated the Eighth Amendment to the United States Constitution because they were deliberately indifferent to his serious medical needs. Id. at 16–19. He contends Defendants unconstitutionally failed to provide adequate medical care and treatment of his neuropathic back pain. Id. Plaintiff also alleges that the failure to provide or continue Plaintiff's medication of choice was based on a change in policy related to pain medication and the criteria used in approving its use. Id.

More specifically, Plaintiff argues that Dr. Chau acted with deliberate indifference to plaintiff's serious medical needs—namely, his chronic pain—in discontinuing Plaintiff's

4

1   effective pain medication and failing to prescribe an effective alternative. See id. at 16. Dr. Smith,

2   too, allegedly acted with deliberate indifference to Plaintiff's serious medical condition by merely

3   continuing Dr. Chau's treatment plan and also adding psychiatric medication known to cause side

4   effects in bipolar patients like Plaintiff. Id. at 16–17.

5          Defendant Bobbala also allegedly violated the Eighth Amendment because she was

6   deliberately indifferent to Plaintiff's serious chronic pain. See id. at 17. Bobbala allegedly routinely

7   denies (or causes to be denied) the overwhelming majority of prescriptions for non-formulary pain

8   medications. Id. Bobbala's actions, in Plaintiff's view, were arbitrary and indiscriminate. Id.

9          Finally, Plaintiff argues that Defendant Bal is the author of CDCR's policy covering

10  approval of non-formulary pain medications. Id. at 18 Her actions have allegedly resulted in

11  Plaintiff's lack of access to appropriate pain medication and his continued needless suffering. Id.

12  at 19. Bal was allegedly deliberately indifferent to Plaintiff's serious medical needs. Id.

13                          **II. THE PARTIES' EVIDENCE**

14         Local Rule 260 requires motions for summary judgment to include a separate

15  Statement of Undisputed Facts. L.R. 260(a). Each Statement must enumerate each specific, material

16  fact relied upon in the motion and cite to any document—e.g., a deposition—establishing that fact.

17  Id. Parties opposing motions for summary judgment must reproduce the facts in the moving party's

18  Statement of Undisputed Facts and admit the facts that are undisputed and deny those that are

19  disputed. See L.R. 260(b). The opposing party must include with each denial a citation to any

20  document supporting the denial. Id. Opposing parties may also include concise Statements of

21  Disputed Facts encompassing all material facts over which there is a genuine dispute. Id.

22         Both parties complied with Local Rule 260. See ECF Nos. 111-4; 115. The Court

23  lays out the undisputed facts and disputed facts below. Plaintiff, at times, disputes only portions of

24  an alleged undisputed fact. The Court recites unchallenged portions of facts as appropriate.

25  ///

26  ///

27  ///

28  ///

**A.  Undisputed Facts:**

Defendants contend that the following facts are undisputed. Defendants support their statement with several dozen exhibits, including Plaintiff's medical records and Plaintiff's attached deposition. See ECF No. 111-4. Plaintiff does not dispute the facts below.

Plaintiff is a state prisoner in custody of the California Department of Corrections and Rehabilitation. At all relevant times, Defendants occupied the following positions: Defendant Dr. Chau is a physician at MCSP; Defendant Dr. Smith is MCSP's Chief Physician and Surgeon; and Defendant Bobbala was CSP-Sac's Chief Medical Executive.

CDCR transferred Plaintiff to MCSP on June 7, 2016. When Plaintiff arrived at MCSP, he had no accommodations to assist with his daily activities. Dr. Horowitz and Dr. Flanigan, a psychiatrist, both reviewed Plaintiff's then-current medications when he arrived at MCSP. Dr. Horowitz noted Plaintiff had connective tissue and spinal conditions. Dr. Horowitz continued Plaintiff's medications, include gabapentin at 3000 milligrams per day. The continuation of gabapentin, however, was only valid for ninety days.

Plaintiff submitted a sick call slip on June 10, 2016, claiming that his evening dose of gabapentin had been reduced and that he was in pain. Plaintiff submitted another sick call slip on June 21, 2016. He claimed that he was now in as much pain as he was prior to an earlier surgery. Plaintiff contends that the 3000-milligram dose of gabapentin was ineffective. He requested consultation with a doctor for possible surgery.

Dr. Vaughn met with Plaintiff on July 8, 2016. Dr. Vaughn noted Plaintiff had previously underwent successful laminectomy of the spine in 2013. Plaintiff complained to Dr. Vaughn about pain in his left leg and burning and stated that his current dose of gabapentin did not adequately resolve the pain. Dr. Vaughn prescribed Sulindac, pain therapy, and continued Plaintiff's gabapentin prescription.

Plaintiff submitted a sick call slip on September 16, 2016. He claimed that his back pain was so severe that walking was difficult. Prison medical staff prescribed 300 milligrams of gabapentin. That same month, Plaintiff submitted a sick call slip requesting renewal of his non-formulary gabapentin prescription. Medical staff continued the prescription for 30 days.

1           Dr. Chau subsequently began weaning Plaintiff off gabapentin on October 4, 2016.

2    Plaintiff met with Dr. Chau on October 25, 2016, regarding Plaintiff's pain. Dr. Chau noted that

3    Plaintiff had degenerative joint disease and a history of chronic low back pain. Plaintiff appeared

4    functional and able to undertake daily activities without assistance. Dr. Chau advised activity

5    modification; placed a medical order to assign Plaintiff a lower bunk and physical restrictions such

6    as no height, ladder, or machinery; continued Plaintiff's Sulindac prescription; and advised use of

7    capsaicin cream. Dr. Chau and Plaintiff discussed alternative medication for pain management.

8           Plaintiff later filed a medical grievance against Dr. Chau. He claimed that Dr. Chau

9    failed to examine him or refer him to a specialty clinic prior to discontinuing his gabapentin.

10   Plaintiff requested a new primary care physician and reinstatement of his gabapentin prescription.

11          Dr. Smith denied Plaintiff's grievance at the first level of review. Dr. Smith noted

12   in his denial that Plaintiff had agreed to try an alternative medication, venlafaxine,[3] for pain

13   management and that Plaintiff's sulindac and capsaicin cream had been continued. Unsatisfied with

14   Dr. Smith's response, Plaintiff appealed to the second level of review. Staff referred Plaintiff to

15   follow-up treatment with a primary care physician. Plaintiff's grievance was then denied at the

16   second level of review. No intervention resulted from Plaintiff's grievance.

17          CDCR later transferred Plaintiff to CSP-Sac. On December 24, 2016, Plaintiff

18   submitted a sick call slip claiming that physical therapy and capsaicin cream were not managing

19   his pain. Plaintiff later submitted a grievance regarding denial of medical care on January 3, 2017.

20   Plaintiff alleged that no one had responded to his prior sick call slip. Dr. Wadell then examined

21   Plaintiff on February 2, 2017. Dr. Wadell ordered Plaintiff a back brace and cane, and prescribed

22   Tylenol with codeine to treat Plaintiff's pain. Plaintiff was to follow up in thirty days. The January

23   3, 2017, grievance was partially granted.[4]

24          Plaintiff submitted a medical grievance on March 5, 2017. Plaintiff requested an

25   appointment to address his pain. He requested more effective medication such as gabapentin or

---

[3] Plaintiff indicates that he agreed to take Effexor. ECF No. 9 at 10. Solely for the purposes of clarity, the Court notes that venlafaxine is produced under the brand name Effexor. See, e.g., A.S. v. Pfizer, Inc., No. 1:13–cv–00524–LJO–JLT, 2013 WL 2384320, at 1 (E.D. Cal. May 30, 2013).

[4] The response to Plaintiff's January 3, 2017, grievance recognized Dr. Wadell's treatment and, in so doing, partially granted the grievance. See ECF No. 111-4 at 78–89.

Lyrica. The first-level response denied specific medication. Plaintiff elevated his grievance to the second level. Bobbala partially granted the appeal. She did not grant stronger medication but referred Plaintiff's request to the pain management committee. Bobbala gave Plaintiff access to CDCR's pain medication policies and noted he had since been prescribed ibuprofen.

Later, Plaintiff spoke with Dr. Felder at a pain group for inmates. They apparently discussed Plaintiff's concerns over CDCR policies inhibiting prescription of certain medications and how Dr. Felder would not get involved in prescription decisions.[5] See ECF No.111-4 at 97–98.

**B.  Disputed Facts:**

Plaintiff disputes or partially disputes Defendants' alleged undisputed facts (UDF) numbers 2, 11, 14, 16, 29, 30, 31, 32, and 35. The Court reproduces only those portions of an alleged fact that Plaintiff challenges. Plaintiff sometimes characterizes objections to evidence as a dispute rather than an objection. Where Plaintiff objects to admission of evidence rather than the substance of a fact, the Court discusses those objections further below.

Plaintiff also sometimes fails to cite to any evidence supporting his denials of Defendants' facts. Defendants correctly included a Rand notice alongside their motion for summary judgment. The Rand warning specifically admonished Plaintiff that, in responding to Defendants' statement of undisputed facts and denying a given fact, Local Rule 260(b) required Plaintiff to include with any denial a citation to the record supporting his denial.  See ECF No. 111-1 at 3; see also Fed. R. Civ. P. 56(c)(1)(A). Defendants further warned Plaintiff that if he did not submit his own evidence in opposition, summary judgment could be entered against him. ECF No. 111-1 at 3

If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court may deem the fact undisputed for purposes of a motion for summary judgment. Fed. R. Civ. P. 56(e)(2). Plaintiff is entitled to oppose Defendants' motion, and the Court considers his opposition. The Court will also consider Plaintiff's complaint and the documents attached to Plaintiff's opposition. But Plaintiff has not complied with Rule 260(b). The Court deems

---

[5] Defendants do not actually allege the subject of Plaintiff and Dr. Felder's discussions. Defendants cite Plaintiff's deposition as the basis for the fact. Plaintiff there contends that he and Dr. Felder spoke of the CDCR pain management policies. Because Plaintiff does not dispute that he spoke with Dr. Felder, the Court includes the substance of their conversation for the purposes of clarity. ECF No. 112-4, Ex. C., Thornberry Dep. at 69:10–70-23.

Plaintiff to have admitted those facts not properly disputed by his submissions. <u>See, e.g.</u>, Fed. R. Civ. P. 56(e)(2); L.R. 260(b); <u>Beard v. Banks</u>, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); <u>Brito v. Barr</u>, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020); <u>see also</u> <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004).

1. **Defendants' Alleged Undisputed Fact #2:** Defendant Bal was the Chief Executive Officer (CEO) at CSP-Sac. Felder was the Deputy Medical Executive Field Operations (North).

   a. **Plaintiff's Response:** Plaintiff cites his complaint to dispute Defendants' characterizations of Defendant Bal's and Felder's positions with CDCR. He contends that Bal was the Deputy Medical Executive Field Operations (North). He also contends that Felder was the Chief Executive Officer at CSP-Sac.

   b. **Determination:** Properly disputed.

2. **Defendants' Alleged Undisputed Fact #11:** Plaintiff submitted a sick-call slip on August 5, 2016, claiming that he fell off the top bunk, and he had not yet received physical therapy. (DX B-1, p. 014.)

   a. **Plaintiff's Response:** Plaintiff contends that the sick call slip referred to an event occurring over a year prior. He argues that representing the slip as contemporaneous with his current challenge to treatment of his chronic pain is misleading. Plaintiff does not cite to the record.

   b. **Determination:** No citation included. Improperly denied. Admitted.

3. **Defendants' Alleged Undisputed Fact #14:** On October 4, 2016, Dr. Chau began weaning Plaintiff off gabapentin. (DX B-1, p. 019.) Plaintiff was weaned off gabapentin over twelve days. (<u>Id.</u>). Dr. Chau also issued an order for a follow-up appointment to address Plaintiff's chronic pain. (DX B-1, p. 020.)

   **a.** **Plaintiff's Response:** Plaintiff argues that the alleged follow-up appointment was indeterminate, further indicating that no plan was in place to treat Plaintiff's pain. Dr. Chau order Plaintiff's gabapentin discontinued without examining Plaintiff, again without an alternative plan in place to treat Plaintiff's pain.[6]

   **b.** **Determination:** No citation included. Improperly denied. Admitted.

**4.** **Defendants' Alleged Undisputed Fact #16:** Plaintiff met with Dr. Chau on October 25, 2016. Dr. Chau noted: "The patient specifically requests Neurontin or Lyrica for his chronic low back ban and history of nerve pain in his back . . . ."

   **a.** **Plaintiff's Response:** Plaintiff states that he did not request a specific type of medication, but rather requested *any* medication that would treat his pain. Plaintiff does not cite to the record.[7]

   **b.** **Determination:** No citation included. Improperly denied. Admitted.

**5.** **Defendants' Alleged Undisputed Fact #29:** Plaintiff submitted a grievance on March 5, 2017, claiming that he wanted a follow-up appointment to address his pain, and possibly the inclusion of gabapentin or Lyrica as a treatment option. (DX B-1, p. 071.) Plaintiff also requested that the policies regarding medications be changed, and he be given the name of the Medical Director of the Northern region.  (Id.)

   **a.** **Plaintiff's Response:** Plaintiff argues that he did not request that the CDCR policies controlling prescription of pain medication be altered. Rather, he contends that simply requested paper copies of the policies. He properly cites to a copy of his request (citing a copy of his request at ECF No. 111-4 at 84–85).

   **b.** **Determination:** Properly disputed.

///

---

[6] Plaintiff appears to take issue with the summary nature of Defendants' UDF number 11, and the lack of a characterization of Dr. Chau's actions as being taken without an alternative treatment plan in place. He does not appear to take issue with the substantive content of the fact. In any event, Plaintiff does not properly support the dispute.
[7] Plaintiff also objects to UDF number 16 as hearsay. The Court addresses that objection below.

6. **Defendants' Alleged Undisputed Fact #30:** Plaintiff's [March 5, 2017] grievance was partially granted at the first level of review, but his request for change in policy and specific medications was denied. (DX B-1, p.075-076.)

    a. **Plaintiff's Response:** Plaintiff again argues that he did not request that the CDCR policies controlling prescription of pain medication be altered. Plaintiff also argues that he did not formally request specific medication. Instead, he contends that he only requested paper copies of the policies and listed example medications for possible prescription. He properly cites to a copy of his request. <u>See</u> ECF No. 115 at 7 (citing a copy of his request at ECF No. 111-4 at 84–85).

    b. **Determination:** Properly disputed.

7. **Defendants' Alleged Undisputed Fact #31:** Dissatisfied, Plaintiff elevated the grievance to the second level of review, where it was reviewed by D. Bobbala. (DX B-1, p. 077-078.) She noted that "[a]t the Second Level of Review this appeal was researched and reviewed. The medical records show that you have received regular medical treatment, exams, diagnostic tests, lab work, and medications. You have also received extensive mental health treatment with frequent monitoring and/or counseling. You were seen by your PCPs on 3/1/17, 3/3/l7, 4/14/17, and 5/2/17. You continue to have low back pain since your laminectomy in April 2013. Your PCPs have adjusted your pain medications to ensure the appropriate management of your pain. A referral for physical therapy was approved on 4/2/l7 and is pending scheduling. It is also noted on 5/2/17 that your request for stronger medication would be presented to the pain management committee. This review is pending and on 5/2/17 you were prescribed Ibuprofen, 800 mg as needed. Your CDCR 7410 and 1845 were updated on 4/l4/l7. Based on this information, Plaintiff's appeal was partially granted.  (<u>Id.</u>)

    a. **Plaintiff's Response:** Plaintiff disputes UDF No. 31 because it is "conclusory." He argues Defendants misstate the factual basis for his appeal. He offers no citation.

    b. **Determination:** No citation included. Improperly denied. Admitted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**8.  Defendants' Alleged Undisputed Fact #32:** Plaintiff has never been treated or examined by either Defendant Bal or Felder. (Defendants' Exhibit C (DX C, Plaintiff's deposition transcript, at 69:16-71:18.)

    **a.  Plaintiff's Response:** Plaintiff argues that Bobbala, in her administrative and supervisory capacity as Chief Medical Executive, was responsible for approval of certain medications and treatments. She is thus, in Plaintiff's view, a member of all "treatment teams" under her supervision. Similarly, Defendant Bal (Plaintiff does not discuss Felder) was responsible for the creation and enforcement of the pain medication guidelines, making her responsible for their "consequences."

    **b.  Determination:** No citation included. Improperly disputed. Admitted.

**9.  Defendants' Alleged Undisputed Fact #35:** The policy regarding formulary and non-formulary medications was developed in 2011, and Plaintiff does not know who was involved in the formulation of the policies. (DX C at 71:23-72:24.)

    **a.  Plaintiff's Response:** Plaintiff only contends that he made timely requests for interrogatories about who was involved in creating the medication polices. It is unclear what information he disputes. In any event, he does not cite to the record.

    **b.  Determination:** No citation included. Improperly denied. Admitted.

**C.  Plaintiff's Objections to Defendants' Statement of Undisputed Facts:**

    Plaintiff objects to Defendants' alleged undisputed facts numbers 15, 16, 22, 32, and 34. See ECF No. 115. The Court rules on those objections as follows. Where the Court overrules an objection, Defendants' alleged undisputed fact is admitted in full unless the Court narrows the scope of admissibility.

**1.  Defendants' Alleged Undisputed Fact #15:** On October 12, 2016, Plaintiff claimed to be suicidal, and took a handful of assorted pills. (DX B-1, p. 021.) Plaintiff was removed from his cell and escorted to the triage and treatment area, and then to an outside hospital

for observation. (Id.) Plaintiff's medications were later prescribed as DOT (crush and float) as he was found hoarding medication. (DX B-1, p. 023).

    **c. Plaintiff's Objection:** Plaintiff objects to the relevance of UDF number 15. He argues that his attempted suicide by overdose is irrelevant as they involved psychiatric medications. He further argues no other incidents of hoarding occurred.

    **d. Defendants' Reply:** Defendants do not reply to the objection. See ECF No. 116.

    **e. Ruling:** Overruled.

  **2. Defendants' Alleged Undisputed Fact #16:** Plaintiff met with Dr. Chau on October 25, 2016, for a chronic care program visit. Regarding Plaintiff's chronic low back pain, Dr. Chau noted: "The patient with a history of chronic low back pain, status post lumbar laminectomy. He had an x-ray as ordered by previous Primary Care Physician (PCP) in July 2016 which showed moderate to severe degenerative joint disease (DJD). The patient specifically requests Neurontin or Lyrica for his chronic low back pain and history of nerve pain in his back. Upon review of his medical condition and evaluation with the patient today, the patient appeared to be functional, able to do all activities of daily living without any assistance. He has no loss of bowel or bladder control. Advised the patient in overall management of his chronic pain: 1) Advised activity modification. 2) Update his Chrono 7410 for lower bunk, with physical restrictions such as no height, no ladder, no machinery, no handling hot objections, and no operating motorized vehicle. 3). Continue with sulindac 150 mg for pain control. Side effects discussed. 4) Also use of capsaicin cream. Also discussed were other formulary alternative adjunctive medications. At this point, will consider other adjunctive pain medication if needed." (DX B-1, p. 026-027.)

    **f. Plaintiff's Objection:** Plaintiff argues that Defendants' exhibit submitted in support of UDF number 16 is hearsay. He objects to Defendants use of the medical record to "make an allegation on an unsupported claim."

///

13

g. **Defendants' Reply:** Defendants argue that Dr. Chau's written statements in Plaintiff's medical records are either not hearsay or fall within an exception to the hearsay rule. ECF No. 116 at 3 (citing Fed. Rs. Evid. 801, 803). Defendants claim the records are admissible because they involve statements made for medical treatment, and because they involve the statement of a party opponent.[8]

h. **Ruling:** Overruled.[9] Although he might otherwise raise a valid hearsay objection, Plaintiff's objection is mystifying because he himself draws upon facts from the medical records to which he objects to argue that Dr. Chau's provision of care violated the Eighth Amendment. See, e.g., ECF No. 114 at 4. Plaintiff's own motion for summary judgment relies upon Dr. Chau's notes to argue that Dr. Chau was deliberately indifferent. ECF No. 104 at 8. The Court construes Plaintiff's use of facts from the October 25, 2016 medical record as an admission of their truth. The October 25, 2016, medical records are admitted.

///

---

[8] Federal Rule of Evidence 803 does not provide an exception here. Although statements a person makes to a doctor for purposes of a medical diagnosis or treatment are an admission to the hearsay rule, the statements that a doctor makes to a patient are not excepted. See Fed. R. Evid. 803(4); Bulthuis v. Rexall Corp., 789 F.2d 1315, 1316 (9th Cir. 1985); Garcia v. Praxair, No. 1:18-cv-01493-SAB, 2021 WL 38183, at *30 (E.D. Cal. Jan. 5, 2021). Federal Rule of Evidence 801 also does not provide an exclusion because Plaintiff is Defendants' opponent, not Dr. Chau. Rule 801 permits admission of an opposing party's statement if the state is offered against an opposing party and was made *by the party*, or a person whom the party authorized to make a statement, by the party's employer, or by the party's coconspirator. Fed. R. Evid. 801(d)(2)(A)–(E). None of those exceptions apply here. See id.

[9] Defendants' submitted records do not appear to be properly authenticated. See ECF No. 111-4; see also, e.g., Salkin v. United Servs. Auto. Ass'n, 835 F. Supp. 2d 825, 827 (C.D. Cal. 2011). Nevertheless, the Court may consider the records at this summary judgment stage because the authentication issue may be cured at trial; nothing about the documents' contents (for the purposes for which the Court has admitted them) suggests they would be inadmissible at trial if properly authenticated. See Gomez v. City of Vacaville, No. 2:18-cv-26998-KJM-KJN, 2020 WL 5235674, at *4 (E.D. Cal. Sept. 2, 2020); Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006). In other words, when evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence. See Burch, 433 F. Supp. 2d at 1120. Furthermore, Plaintiff's medical records are relevant here because they go directly to Plaintiff's Eighth Amendment claims and whether Dr. Chau inappropriately failed to do *anything* to treat Plaintiff's medical needs.

As the Ninth Circuit has noted, at the summary judgment stage, courts do not focus on the admissibility of the evidence's form. Fraser v. Goodale, 342 F.3d 1032, 1036–37 (9th Cir. 2003); Instead, courts focus on the admissibility of its contents. Id.; Block v. City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir.2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."); see Fed. Deposit Ins. Corp. v. N.H. Ins. Co., 953 F.2d 478, 485 (9th Cir.1991) ("the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.") (internal quotation marks and citation omitted).

3. **Defendants' Alleged Undisputed Fact #22:** On May 12, 2017, the grievance was denied at the Director's level of review after Plaintiff complained it was improperly rejected. (DX B-1, p. 060-061.) It was determined that no intervention at the Director's Level of Review was necessary as Plaintiff's medical condition was being evaluated and he was are receiving treatment deemed medically necessary. (Id.)

    a. **Plaintiff's Objection:** Plaintiff objects, arguing that "the determination of [medically] necessary treatment was made by defendant and, therefore was a subjective determination and not an objective fact."

    b. **Defendants' Reply:** Defendants do not reply to the objection. See ECF No. 116.

    c. **Ruling:** Overruled. Plaintiff asserts no reason why UDF number 22 is inadmissible.

4. **Defendants' Alleged Undisputed Fact #32:** Plaintiff has never been treated or examined by either Defendant Bal or Felder. (Defendants' Exhibit C (DX C, Plaintiff's deposition transcript, at 69:16-71:18.)

    a. **Plaintiff's Response:** Plaintiff objects to the "conclusory" nature of UDF No. 32.

    b. **Defendants' Reply:** Defendants have not replied to the objection. See ECF No. 116.

    c. **Ruling:** Overruled. Plaintiff does not raise a valid objection to admissibility.

5. **Defendants' Alleged Undisputed Fact #34:** Plaintiff has never been treated by, spoken to, or written to Dr. Bal. (DX C at 71:4–18)

    a. **Plaintiff's Response:** Plaintiff objects to characterization of the word "treated."

    b. **Defendants' Reply:** Plaintiff has not raised a valid objection. ECF No. 116 at 3.

    c. **Ruling:** Overruled. Plaintiff does not raise a valid objection to admissibility.

### III. STANDARD OF REVIEW

Summary judgment is warranted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Washington Mutual Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). A fact is material

if it might affect the outcome of the lawsuit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In other words, an issue of material fact is genuine only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party. <u>E.g. id.</u> On motion for summary judgment, the Court determines only whether there is a genuine issue for trial. <u>Thomas v. Ponder</u>, 611 F3d 1144, 1149–50 (9th Cir. 2010). In so doing, the Court must liberally construe a pro se prisoner plaintiff's filings. <u>Id.</u> at 1150.

Federal Rule of Civil Procedure 56 permits courts to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to an entire claim or a portion of a claim. <u>See</u> Fed. R. Civ. P. 56(a); <u>Lies v. Farrell Lines, Inc.</u>, 641 F.2d 765, 769 n.3 (9th Cir. 1981); <u>Smith v. Cal. Dep't of Highway Patrol</u>, 75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014). The same standards apply on motion for summary judgment and for summary adjudication. <u>See</u> Fed. R. Civ. P. 56 (a), (c); <u>Mora v. Chem-Tronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. <u>Id.</u> at 323. A party demonstrates that summary judgment is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323 (quoting Fed. R. Civ. P. 56(c)). On an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325. A moving party may also produce evidence negating an essential element of the nonmoving party's claim or defense. E.g., <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the opposing party to present specific facts showing a genuine issue of a material fact. <u>See</u> Fed R. Civ. P. 56(e); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). An opposing party,

however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 587. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48. An issue of fact is a genuine issue if it reasonably can be resolved the non-moving party's favor. Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).

In this regard, the opposing party must move beyond the pleadings through citations to the record—such as citations to affidavits, depositions, and admissions—designate specific facts establishing a genuine issue for trial. Celotex, 477 U.S. at 324. The opposing party must "show more than the mere existence of a scintilla of evidence." Anderson, 477 U.S. at 252. A non-moving party, however, is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Still, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); see also Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010). The Court need not scour the record to establish an absence or presence of factual disputes when the evidence is not adequately set forth in opposing papers. See, e.g., Carmen, 237 F.3d at 1031. The Court, furthermore, cannot engage in determinations of credibility or weighing of evidence. Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017). Nevertheless, the evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in that party's favor. E.g., Anderson, 477 U.S. at 255; Fresno Motors, 771 F.3d at 1125. Summary judgment is inappropriate when divergent ultimate inferences may reasonably be drawn from the undisputed facts. Fresno Motors, 771 F.3d at 1125.

///

///

17

1

**IV. DISCUSSION**

2

**A. Eighth Amendment Standard:**

3         To establish an Eighth Amendment claim based on prison medical treatment, an

4 inmate must show a deliberate indifference to a serious medical need. Jett v. Penner, 439 F.3d 1091,

5 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Hallett v. Morgan, 296

6 F.3d 732, 744 (9th Cir. 2002). A plaintiff must show (1) an objective "serious medical need" by

7 demonstrating that "failure to treat a prisoner's condition could result in further significant injury

8 or the 'unnecessary and wanton infliction of pain'" and (2) that a defendant's response to the serious

9 medical need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith,

10 974 F.2d 1050, 1059–60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled

11 on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see

12 Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). Denial *or* delay of medical care may

13 constitute a constitutional violation. Estelle, 429 U.S. at 104–05. Intentional interference with an

14 inmate's medical care may also constitute deliberate indifference. E.g., Jett, 439 F.3d at 1091.

15         Deliberate indifference exists if a defendant *subjectively* "knows of and disregards

16 an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir.

17 2004) (emphasis added) (citation and internal quotation marks omitted). The question of deliberate

18 indifference focuses on what a defendant's mental attitude actually was. Farmer v. Brennan, 511

19 U.S. 825, 835–37 (1994). A prison official must have had a sufficiently culpable state of mind. Id.

20 at 834. Deliberate indifference can be established by showing (a) a purposeful act or failure to

21 respond to a prisoner's pain or medical needs and (b) harm caused by the indifference." Jett, 439

22 F.3d at 1096 (citation omitted). Negligent medical care is not a constitutional violation. Frost v.

23 Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (citing Estelle, 429 U.S. at 105–06); see also Farmer,

24 511 U.S. 825, 835–37. "Medical malpractice does not become a constitutional violation merely

25 because the victim is a prisoner." Estelle, 429 U.S. at 106.

26         A difference of opinion between an inmate and prison medical staff about the proper

27 course of medical treatment is not deliberate indifference. See, e.g., Toguchi, 391 F.3d at 1058;

28 Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Nor does a dispute between an inmate and

18

1   prison officials over the necessity or extent of medical treatment establish a constitutional violation.

2   See, e.g., Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242; see also, e.g., Hendon v. Ramsey,

3   528 F.Supp.2d 1058, 1065 (N.D. Cal. 2007). To establish that a difference of opinion rose to the

4   level of deliberate indifference, an inmate "must show that the course of treatment the doctors chose

5   was medically unacceptable under the circumstances." Toguchi, 391 F.3d at 1058; Jackson v.

6   McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Inmates must show that a medical provider chose a

7   course of treatment in conscious disregard of an excessive risk to the inmate's health. See Jackson,

8   90 F.3d at 332.

9       **B.  Dr. Chau:**

10          **1.     The Parties' Arguments:**

11          Plaintiff claims that Dr. Chau was deliberately indifferent to Plaintiff's serious

12   medical needs in terminating Plaintiff's gabapentin prescription, which had previously been at least

13   mildly effective in managing his pain. See, e.g., ECF No. 9 at 16. Dr. Chau was deliberately

14   indifferent because he did not prescribe an effective alternative treatment. See, e.g., id. Plaintiff

15   contends that Dr. Chau illegally interfered in his medical care. See, e.g., id.; ECF No. 114 at 2–3.

16          Defendants argue that Plaintiff's claims boil down to dissatisfaction that Dr. Chau

17   would not provide Plaintiff with his preferred medication. ECF No. 111-3 at 8. Yet, Plaintiff fails

18   to allege any facts that establish that Dr. Chau subjectively disregarded Plaintiff's medical needs in

19   initiating an alternative course of treatment. See id. Although Plaintiff was taking gabapentin, he

20   submitted a request indicating that his pain was unmanaged. Id. Dr. Chau weaned Plaintiff off

21   gabapentin and prescribed topical pain reliever, physical therapy, and accommodations such as a

22   low bunk. Id. Dr. Chau continued Dr. Vaughn's prescription of Sulindac for pain. UDF No. 16.

23          Defendants further argue that, when Plaintiff transferred to Dr. Chau's care, Dr.

24   Chau became responsible for Plaintiff's treatment. ECF no. 111-3 at 9. He thus did not "interfere"

25   in Plaintiff's medical care in altering Plaintiff's treatment plan. Id. at 8–9. Nothing indicates that

26   Dr. Chau was insincere in believing his newly prescribed treatment would be effective. Id. at 8. Dr.

27   Chau exercised independent medical judgment. Id. at 9. Dr. Chau had no legal obligation to follow

28   Dr. Vaughn's prescription of gabapentin. Id. And, at any rate, Dr. Chau could reasonably believe

1    that an alternative course of treatment was warranted because Plaintiff submitted medical requests

2    indicating that the gabapentin was not effectively managing his pain. Id. (citing UDF Nos. 9, 12).

3               Finally, Defendants argue that Dr. Chau's statements to Plaintiff are not evidence of

4    deliberate indifference. Id. Dr. Chau allegedly became irritated when Plaintiff asked for medication

5    similar to gabapentin and for Dr. Chau to review Plaintiff's medical file. Id. Dr. Chau apparently

6    stated that he only needed to make Plaintiff functional, not comfortable, and told Plaintiff to leave.

7    Id. Nothing indicates that Dr. Chau, even if irritated, knowingly chose subpar treatment. Id.

8               Plaintiff, in sum, responds that Defendants mischaracterize his claims as challenging

9    the denial of medication of his choice and incorrectly describe Dr. Chau's obligations. ECF No.

10    114 at 1–4. Plaintiff argues that he challenges more than Dr. Chau's denial of his medication of

11    choice. Id. at 1. Relying upon records from his spinal surgery, Plaintiff implies that Defendants

12    minimize the nature of his pain.[10] Id. (citing ECF No. 115 at 11). Plaintiff's surgery repaired a disc

13    that triggered neuropathic pain, and his ongoing pain is accordingly not common back pain but

14    neuropathy. Id. at 2. The implication is that Plaintiff required more aggressive treatment. Id.

15               Plaintiff argues that Defendants' observation that he submitted a medical request

16    because gabapentin was ineffective (see UDF Nos. 9, 12) is irrelevant insofar as it is premised on

17    the notion that Plaintiff's surgery was successful. ECF No. 114 at 2. The record of Plaintiff's

18    surgery indicates possible failure to improve. Id. (citing ECF No. 115 at 11). Plaintiff appears to

19    suggest that Defendants' note that gabapentin was ineffective is irrelevant to the extent it indicates

20    that he did not need it because of a successful surgery. Id. Dr. Chau was thus nevertheless

21    deliberately indifferent in discontinuing gabapentin. Id. Even if gabapentin was ineffective, nothing

22    indicates that it could not be effective if prescribed alongside an additional treatment. Id. Plaintiff

23    argues that Defendants' assertions of what qualifies as sufficient treatment are unsubstantiated. Id.

24               Plaintiff, finally, argues that Dr. Chau *did* interfere in his medical care because he

25    had a responsibility to continue Dr. Vaughn's care. Id. at 2–3. Specifically, Plaintiff contends that

26

27

28

---

[10] Plaintiff indicates that he cites the surgeon's report from his laminectomy, identified as Exhibit 1 to his opposition brief. See ECF No. 114 at 1–2. But Plaintiff did not include a copy of the report with his opposition brief. See id. He did, however, include a copy of the report with his denials of Defendants' undisputed facts. ECF No. 115 at 11. The Court cites to that document where Defendant cites to the surgical report.

1   legal precedent establishes Plaintiff's right to expect effective medical treatment to be continued

2   (i.e., gabapentin). Id. Plaintiff cites no legal precedent. Plaintiff contends that Dr. Vaughn remained

3   his primary care physician even after he was transferred to Dr. Chau's care. Id. at 3. Because Dr.

4   Chau did not continue Dr. Vaughn's course of treatment, he knowingly interfered in Plaintiff's

5   medical care by undertaking treatment that he knew would be ineffective Id. at 3–4.

6   **2. Analysis:**

7   To be liable for the claims that Plaintiff asserts, Dr. Chau must have (1) been

8   deliberately indifferent (2) to Plaintiff's serious medical needs. See, e.g., Jett, 439 F.3d at 1096.

9   The parties do not raise any dispute that Plaintiff's chronic pain is a serious medical need.[11] Thus,

10  any factual disputes regarding Dr. Chau would go to his knowledge and treatment of Plaintiff's

11  pain. Considering the undisputed facts, Defendants have met their initial burden of showing (1) an

12  absence of a dispute over a material fact that would alter the outcome of the case, and (2) that they

13  are entitled to summary judgment as a matter of law. See Celotex, 477 U.S. at 322–23. The burden

14  thus shifts to Plaintiff to establish a genuine dispute of material fact. He fails to do so.

15  Dr. Chau knew of Plaintiff's pain. Dr. Chau began weaning Plaintiff off gabapentin

16  on October 4, 2016, and subsequently examined Plaintiff on October 25, 2016. Dr. Chau noted

17  Plaintiff's degenerative disease and pain. There is no issue for trial as to Dr. Chau's knowledge.

18  Plaintiff must accordingly establish some dispute over whether Dr. Chau

19  disregarded Plaintiff's pain. Plaintiff has not done that either. Defendants have carried their initial

20  burden of showing an absence of dispute or proof as to Dr. Chau's alleged disregard. None of the

21  facts over which the Court has identified a dispute materially go to Dr. Chau's alleged disregard of

22  Plaintiff's pain. Irrespective of the appropriateness of Dr. Chau's selected treatment, Dr. Chau

23  ventured into a plan to treat Plaintiff's enduring pain. For instance, after his October 25, 2016,

24  examination of Plaintiff, Dr. Chau prescribed capsaicin cream, continued Plaintiff's sulindac for

25  pain management, recommended activity modification, and ordered physical restricts such as a

26  lower bunk to help Plaintiff in his daily activities. See ECF No. 111-4 at 39–40.

27
28  [11] Nor could the parties reasonably dispute that Plaintiff's chronic pain is a serious medical need. Serious medical needs include those that reasonable doctors or patients would find worthy of treatment, and include the existence of chronic and substantial pain. Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

1    Although Plaintiff contends that Dr. Chau knew that the new course of treatment

2    was substandard, nothing on the record establishes a triable issue over the sincerity of Dr. Chau's

3    belief in the adequacy of his prescribed treatment. Plaintiff, of course, need not conclusively

4    establish material facts in his favor. T.W. Elec. Serv., Inc., 809 F.2d at 630. That is not the purpose

5    of summary judgment. But Plaintiff must show more than a scintilla of evidence. Anderson, 477

6    U.S. at 252. He has not done so. Plaintiff makes only conclusory allegations that Dr. Chau *knew*

7    that his chosen treatment plan for Plaintiff was ineffective. For example, Plaintiff cites Estelle,

8    Farmer, and Jett, claims he has a right to constitutionally effective care, and broadly concludes

9    "Chau knowingly initiated a course of treatment that was ineffective." ECF No. 114 at 3. Other

10   than stating, without support, that medical professionals know Dr. Chau's treatment is subpar,

11   Plaintiff does not expand into specifics. See id. at 3–4. Such conclusory allegations are insufficient

12   to defeat summary judgment. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007);

13   Taylor, 880 F.2d at 1045. At most, Plaintiff has established some metaphysical doubt as to Dr.

14   Chau's foreknowledge of the appropriateness of his new course of treatment.

15   Inasmuch as Plaintiff contends Dr. Chau's chosen treatment was medically

16   unacceptable under the relevant circumstances (see ECF No. 114 at 4), Plaintiff merely argues over

17   a difference of opinion with Dr. Chau. Plaintiff apparently desired continued prescription of

18   gabapentin, or additional pain-relieving medication. See, e.g., ECF Nos. 9 at 6, 12; 114 at 2–4. Dr.

19   Chau ostensibly disagreed over the necessary treatment. See, e.g., ECF No. 111-4 at 39.

20   Differences of opinion between Plaintiff and Dr. Chau do not establish deliberate indifference. See,

21   e.g., Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242; Hendon, 528 F.Supp.2d at 1065.  Nor

22   does Plaintiff's disagreement with Dr. Chau over the extent of medical treatment. See, e.g.,

23   Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242; Hendon, 528 F.Supp.2d at 1065. To establish

24   that his differences with Dr. Chau rose to deliberate difference, Plaintiff must show that Dr. Chau's

25   chosen course of treatment was medically unacceptable under the circumstances. Toguchi, 391 F.3d

26   at 1058; Jackson, 90 F.3d at 332. Inmates must show that a medical provider chose a treatment in

27   conscious disregard of an excessive risk to the inmate's health. See Jackson, 90 F.3d at 332.

28   ///

1        Outside of baldly stating that Dr. Chau's treatment was unacceptable because

2   medical professionals know that his selected treatments (e.g., topical cream) are ineffective,

3   Plaintiff has not forwarded any medical evidence that Dr. Chau's treatment was inappropriate. That

4   is insufficient to establish that Dr. Chau's care was medically unacceptable. There is presently no

5   basis on the record to conclude that Dr. Chau's care was medically unacceptable, let alone chosen

6   in conscious disregard of a risk to Plaintiff's safety. And although Plaintiff claims that he remained

7   in at least some pain after Dr. Chau's treatment, that claim alone does not establish a deprivation

8   of constitutional dimensions. While Dr. Chau could not knowingly leave Plaintiff in agony, ( See,

9   e.g., Toguchi, 391 F.3d at 1057), so long as Dr. Chau responded reasonably to Plaintiff's pain, even

10  if harm was not completely averted, Dr Chau is not subject to liability here. See, e.g., Farmer, 511

11  U.S. at 845. Plaintiff is obviously entitled to reasonable care, but he is not entitled to a specific type

12  of treatment or even the best available care.[12] E.g., Forbes v. Edgar, 112 F.3d 262, 266–67 (7th Cir.

13  1997); Thornberry v. Chau, No. 2:18-cv-0094-WBS-EFB P, 2019 WL 3302404, at *2–3 (E.D. Cal.

14  July 23, 2019); see also Toguchi, 391 F.3d at 1058 (holding that a doctor was not deliberately

15  indifferent for prescribing an inmate alternative medication).

16        Finally, insofar as Plaintiff argues that Dr. Chau was legally obligated to follow Dr.

17  Vaughn's treatment plan because Dr. Vaughn remained Plaintiff's primary care physician, Plaintiff

18  has not established a genuine issue for trial. Plaintiff does not dispute that he was transferred to Dr.

19  Chau's care when MCSP assigned Plaintiff to the Administrative Segregation Unit. ECF No. 9 at

20  5–6. He provides no legal precedent indicating any obligation on Dr. Chau's part to follow Dr.

21  Vaughn's course of treatment.

22        The undersigned recommends granting summary judgment as to Dr. Chau.

23  ///

24  ///

25  ///

---

26  [12] The Court, for similar reasons, concludes that Dr. Chau's alleged statements and irritability do not establish an Eighth
27  Amendment claim. Dr. Chau knew of and responded to Plaintiff's chronic pain as constitutionally required. See Jett,439
    F.3d at 1096. In any case, Plaintiff asserts that Dr. Chau's irritability extended from Plaintiff's request for a specific
28  medication and review of his file. Even if Dr. Chau was irritable, Plaintiff is not entitled to a specific treatment. Forbes,
    112 F.3d at 266–67; Thornberry, 2019 WL 3302404, at *2–3.

**C. Dr. Smith:**

    **1. The Parties' Arguments:**

Plaintiff claims that Dr. Smith was deliberately indifferent to Plaintiff's pain in denying his grievance challenging Dr. Chau's care. See ECF No. 9 at 16–17. Dr. Smith denied his grievance and continued Dr. Chau's treatment. See id. at 8–11, 16–17. Dr. Smith also prescribed venlafaxine, which is allegedly known to cause side effects in bipolar patients like Plaintiff. Id. at 16–17. Plaintiff contends that Dr. Smith unconstitutionally denied him effective treatment. Id.

Defendants reply that Dr. Smith was not deliberately indifferent in responding to Plaintiff's grievance. ECF No. 111-3 at 10. In fact, Dr. Smith partially granted the grievance.[13] Id.; ECF Nos. 111-3 at 10; 111-4 at 70–71. The parties agree that Dr. Smith added venlafaxine to Plaintiff's treatment, and continued Dr. Chau's treatment of sulindac and capsaicin cream. See ECF Nos. 111-4 at 4, 71; 115 at 4–5. Dr. Smith did not grant Plaintiff's request for gabapentin. See ECF No. 111-4 at 70–71. He determined that gabapentin was not medically indicated. Id. Dr. Smith, Defendants argue, determined that Plaintiff's medical needs were met and that he was not, from his review of Plaintiff's grievance, aware of a serious risk of harm to Plaintiff. Id. at 111-3 at 10.

///

---

[13] There is some confusion, the Court believes, across the parties' pleadings and referenced exhibits. In their motion for summary judgment, Defendants state that Dr. Smith partially granted Plaintiff's grievance, denying gabapentin but adding venlafaxine. E.g., ECF No. 111-3 at 10. Defendants' UDF number 18, however, indicates that Dr. Smith *denied* the grievance, with Dr. Smith having denied gabapentin but providing venlafaxine. ECF No. 111-4 at 70–71. Plaintiff admitted UDF number 18. Plaintiff does not dispute the substance of Dr. Smith's actions either way. See, e.g., ECF Nos. 9 at 8–10; 114 at 4–5; 115 at 4–5. The Court notes this because the record includes *two* grievance responses from Dr. Smith at the first level of review. Defendants submitted one with their statement of undisputed facts, and is the grievance referenced as the one that Dr. Smith partially denied. ECF No. 111-4 at 70–71. That grievance response is dated November 11, 2016. Id. at 70. Plaintiff also submitted one with his first amended complaint. See ECF Nos. 9 at 60. That response is dated December 14, 2016. Id. Dr. Smith denied the grievance underlying the December 14, 2016, response, in which Plaintiff also apparently challenged Dr. Chau's treatment. Id. Plaintiff requested gabapentin and Lyrica for pain management, and that Dr. Chau be reprimanded. Id. Dr. Smith denied Plaintiff's requests, noting that at their earlier meeting regarding the November 11, 2016, grievance, Plaintiff agreed to take venlafaxine and that Dr. Chau's underlying pain management treatment had been continued. Id. Dr. Smith noted Plaintiff had stated that venlafaxine makes him manic. Id.

Defendants appear to confuse the grievances at times, citing to their statement of undisputed facts but reciting information from the December 14, 2016, response as part of the November 11, 2016, response. Plaintiff nevertheless appears to generally agree with Defendants' version of Dr. Smith's actions, instead disagreeing about their legality. See, e.g., ECF Nos. 9 at 8–10; 114 at 4–5; 115 at 4–5. The Court is somewhat unclear as to the events precipitating these multiple grievances. But given that Dr. Smith's actions are consistent across his responses, and because Plaintiff agrees with the factual nature of Dr. Smith's conduct, the Court's analysis is ultimately unchanged.

1    Plaintiff argues that Dr. Smith is liable for his actions in reviewing Plaintiff's

2    grievance because Dr. Smith is a physician. ECF No. 114 at 4. Plaintiff first contends that Dr. Smith

3    would have been aware of the consequences of Dr. Chau's decisions because he is MCSP's Chief

4    Physician and possesses medical education. Id. Second, Dr. Smith added medication to Dr. Chau's.

5    Id. The apparent implication of Plaintiff's argument is that Dr. Smith knew of the inadequacy of

6    Dr. Chau's treatment. Id. Third, Plaintiff argues that Dr. Smith added a medication known to cause

7    side effects when mixed with other psychiatric medications Plaintiff was taking. Id. at 5. He argues

8    that Dr. Smith's prescription of another psychiatric medication is proof that Dr. Chau and Dr. Smith

9    were acting on orders from CDCR superiors rather than making appropriate medical decisions. Id.

10    Dr. Smith may he held liable because he continued an ineffective treatment. Id.

11    **2.  Analysis:**

12    **i.  Dr. Smith's Conduct in Reviewing Plaintiff's Grievance:**

13    To the extent that Plaintiff seeks to impose liability on Dr. Smith for his actions in

14    reviewing Plaintiff's grievances concerning Dr. Chau's care, Plaintiff cannot do so. Prison officials'

15    actions in reviewing grievances are generally not a basis for § 1983 liability.[14] See, e.g., Ramirez

16    v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988);

17    Shaheed v. Cal. Corr. Health Care Servs., No. 13–cv–05751–VC, 2015 WL 3749623, at *5 (N.D.

18    Cal. June 15, 2015). The denial of a grievance, standing alone, does not violate any constitutional

19    right. Shaheed, 2015 WL 3749623, at *5; see Estrada v. Cal. Corr. Inst., No. 1:18-cv-00599-SAB

20    (PC), 2019 WL 568930, at *6 (E.D. Cal. Feb. 12, 2019).

21    That said, Dr. Smith cannot willfully turn a blind eye to the unconstitutional conduct

22    of subordinates. See Jett, 439 F.3d at 1098 (stating that prison officials are deliberately indifferent

23    when they knowingly fail to respond to inmates' requests for help); Taylor v. List, 880 F.2d 1040,

24    1045 (9th Cir. 1989); Ford v. Lewis, No. 2:17-cv-0130-WBS-AC P, 2019 WL 2613426, at *3 (E.D.

25    

26    [14] See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in [constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."); Hunter v. Williams, No. 2:19-cv-1101 CKD P, 2020 WL 2935427, at *5 (E.D. Cal. June 3, 2020); Arellano v. Sedighi, No.: 15-cv-02059-AJB-BGS, 2018 WL 1083386, at *8 (S.D. Cal. Feb. 27, 2018).

1  Cal. June 16, 2019). If Dr. Smith denied Plaintiff's grievance even though he had authority and

2  opportunity to prevent an ongoing constitutional violation (e.g., if Dr. Chau's treatment was

3  constitutionally infirm), he could be subject to liability if he knew about the existing or impending

4  violation and failed to prevent it. See Jett, 439 F.3d at 1098; Ford, 2019 WL 2613426, at *3.

5       Nevertheless, there is no vicarious liability for civil rights violations. See Ashcroft

6  v. Iqbal, 556 U.S. 662, 676–77 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To

7  state a claim under § 1983, Plaintiff must demonstrate a defendant's personal involvement in a

8  violation. Ashcroft, 556 U.S. at 676–77; Jones, 297 F.3d at 934. Liability may not be based merely

9  on Plaintiff's dissatisfaction with administrative process or a decision on an appeal. Ramirez, 334

10  F.3d at 860; Mann, 855 F.2d at 640. Nor is there supervisory liability under § 1983 unless a

11  supervisor (1) was personally involved in a constitutional deprivation, or (2) there is a sufficient

12  causal connection between the supervisor's wrongful conduct and a constitutional violation. E.g.,

13  Ashcroft, 556 U.S. at 676–77; Starr v. Baca, 652 F.3d 1202, 1206–07 (9th Cir. 2011); Rushdan v.

14  Gear, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *3 (E.D. Cal. May 16, 2018).

15       Nothing indicates that Dr. Smith was personally involved in Plaintiff's care other

16  than reviewing Plaintiff's grievance of Dr. Chau's treatment and adding venlafaxine on top of Dr.

17  Chau's treatment plan. It is true that Dr. Smith is a well-educated physician. But the Court does not

18  believe, as Plaintiff suggests, that the mere fact of Dr. Smith's credentials means he was aware of

19  some constitutional shortcoming. Nor does the Court believe that Dr. Smith's addition of

20  venlafaxine to Dr. Chau's course of treatment establishes the constitutional inadequacy of Dr.

21  Chau's actions. Dr. Smith is thus not implicated in a failure to correct a constitutional violation in

22  allowing Dr. Chau's treatment to continue. As discussed, Dr. Chau's care was constitutionally

23  sound. Plaintiff has not forwarded anything indicating that Dr. Smith was aware of an ongoing

24  constitutional violation that he was required to remedy. Inasmuch as Plaintiff may allege it, Dr.

25  Smith is also not liable in his supervisory capacity as Chief Physician.

26       **ii.  Dr. Smith's Prescription of Venlafaxine:**

27       As indicated earlier, Plaintiff largely does not dispute Defendants' asserted facts

28  regarding the substance of Dr. Smith's actions. See, e.g., ECF Nos. 114 at 4–5; 115 at 4–5. He

1   agrees that Dr. Smith partially granted his grievance, that Dr. Smith added venlafaxine to Plaintiff's

2   course of treatment after Plaintiff agreed to it, and that Dr. Smith denied gabapentin and similar

3   medication. See, e.g., ECF Nos. 114 at 4–5; 115 at 4–5. Plaintiff instead largely contests the

4   constitutional implications of Dr. Smith's actions. See, e.g., ECF No. 114 at 4–5. Plaintiff does

5   contend that after beginning venlafaxine, he experienced psychiatric symptoms. ECF Nos. 9 at 10;

6   104 at 5, 13. Defendants do not appear to dispute that fact.

7         Defendants have met their initial burden of demonstrating an absence of any dispute

8   over Dr. Smith's actions materially going to his knowledge and deliberate indifference. The burden

9   accordingly shifts to Plaintiff to designate specific facts showing a genuine issue of a material fact.

10  Matsushita, 475 U.S. at 586–87. The Court concludes that Plaintiff fails to do so.

11        Plaintiff does seem to contend that there is a genuine dispute of material fact over

12  Dr. Smith's knowledge of venlafaxine's ineffectiveness and harmful properties. But Defendants,

13  insofar as they rely upon Dr. Smith's responses to Plaintiff's grievances, do not appear to dispute

14  that Dr. Smith had some knowledge of Plaintiff's psychiatric conditions and Plaintiff's worry that

15  venlafaxine would cause psychological symptoms. See, e.g., UDF No. 18 (citing ECF No. 111-4 at

16  70–71); see also ECF No. 111-3 at 11 (discussing a grievance in which Dr. Smith noted Plaintiff

17  was worried that venlafaxine would cause manic symptoms). There is no dispute to that extent.

18        To the extent that Plaintiff suggests that there is a dispute over Dr. Smith's alleged

19  definitive knowledge about venlafaxine's effect (see, e.g., ECF No. 114 at 4–5), he alleges that he

20  told Dr. Smith that his psychiatrists warned against taking other psychiatric medications. ECF No.

21  9 at 9–10. He contends that Dr. Smith recognized that some medications on CDCR's approved list

22  interact poorly with Plaintiff's lithium. Id. at 9. He also points to the fact that Dr. Smith, in a

23  grievance response, noted Plaintiff worried venlafaxine makes him manic. Id. at 60. Plaintiff does

24  not present any other evidence, beyond his own allegations, that Dr. Smith positively knew

25  venlafaxine would harm him.

26        Notwithstanding, Plaintiff has not met his burden of presenting specific facts

27  establishing a genuine issue for trial. Plaintiff relies on his allegations rather than moving beyond

28  his pleadings with citations to evidence. See, e.g., ECF No. 114 at 4–5; see also Celotex, 477 U.S.

1  at 324. Although Plaintiff submits a litany of other records and CDCR policies on pain management

2  (see, e.g., ECF Nos. 9 at 34–79; 104, Exs. 5, 9) in opposing Defendants' motion for summary

3  judgment, he does not present anything indicating that Dr. Smith definitively knew that venlafaxine

4  would harm Plaintiff. See, e.g., ECF No. 114 at 4–5.

5        Plaintiff broadly concludes that "[Dr.] Smith ordered a medication known to be

6  harmful if combined with the type of medications Plaintiff was then taking." ECF No. 114 at 5. He

7  does not cite anything to support the implication that Dr. Smith knew venlafaxine would actually

8  result in adverse side effects. Such a conclusory allegation is insufficient to overcome summary

9  judgment. See, e.g., Soremekun, 509 F.3d at 984; Taylor, 880 F.2d at 1045; see also Toguchi, 391

10  F.3d at 1059 (stating that speculative allegations that a physician knew a combination of drugs

11  would be dangerous are insufficient to survive summary judgment). At most, Plaintiff has

12  established some metaphysical doubt that Dr. Smith *knew* that *venlafaxine* itself *would* (or likely

13  would) harm Plaintiff. Ethereal doubt as to Dr. Smith's actual knowledge is insufficient.

14        Because there are no other disputes amongst the parties as to Dr. Smith, the question

15  is whether Dr. Smith was deliberately indifferent. Plaintiff seeks to hold Dr. Smith personally liable

16  for prescribing venlafaxine, which he allegedly knew would interact poorly with Plaintiff's other

17  psychiatric medications. See, e.g., ECF No. 9 at 8–10, 16–17; see also ECF No. 114 at 4–5.

18        Assuming that Dr. Smith can be liable for his prescription of venlafaxine on review

19  of Plaintiff's grievance, the Court concludes that Dr. Smith was not deliberately indifferent.

20  Deliberate indifference is a high bar, and Dr. Smith must both have been aware of facts establishing

21  an inference that venlafaxine posed a serious risk to Plaintiff, and then he must have drawn that

22  inference. See, e.g., Toguchi, 391 F.3d at 1057, 1060. If Dr. Smith should have been aware of the

23  risk, but was not, then he did not violate the Eighth Amendment, no matter how severe the risk

24  posed by venlafaxine. See id. at 1057. The question of deliberate indifference focuses on Dr.

25  Smith's mental attitude. See Farmer, 511 U.S. at 835–37.

26        Dr. Smith was aware of Plaintiff's pain and Plaintiff's worry that venlafaxine would

27  induce manic symptoms. But the Court has already concluded that Plaintiff has not shown that Dr.

28  Smith was subjectively aware that venlafaxine would pose an excessive risk of harm to Plaintiff's

1    health. Other than Plaintiff's worries and Dr. Smith's alleged statement that *some* of CDCR's

2    approved medications could interact poorly with Plaintiff's other medications, there is no evidence

3    that Dr. Smith was aware of facts from which he could actually draw the inference of venlafaxine's

4    risk or that he drew that inference.

5         To the extent Plaintiff believes that Dr. Smith is liable for not prescribing some other

6    medication, such as gabapentin, that would have been more effective in treating Plaintiff's pain,

7    Plaintiff only establishes a difference of medical opinion with Dr. Smith, or disagreement with Dr.

8    Smith over the course of treatment and necessity or extent of medical treatment. See, e.g., Toguchi,

9    391 F.3d at 1058; Sanchez, 891 F.2d at 242; Hendon, 528 F.Supp.2d at 1065. To show that his

10    difference of opinion with Dr. Smith over the correct treatment rose to deliberate indifference,

11    Plaintiff must show that Dr. Smith's chosen course of treatment was medically unacceptable under

12    the circumstances. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332. Plaintiff must show that a

13    Dr. Smith chose that course of treatment in conscious disregard of an excessive risk to Plaintiff's

14    health. See Jackson, 90 F.3d at 332. For reasons already discussed, Plaintiff has not done so.

15         The undisputed evidence presently before the Court demonstrates that Dr. Smith

16    possibly prescribed Plaintiff venlafaxine when he should not have. Even assuming, however that

17    venlafaxine was ultimately inappropriate, without a conscious disregard for Plaintiff's safety on

18    Dr. Smith's part, Plaintiff has at most established that Dr. Smith was negligent. See, e.g., Toguchi,

19    391 F.3d at 1059–60. Negligence does not establish an Eighth Amendment violation. Lemire v.

20    California Dept. of Corrections and Rehabilitation, 726 F.3d 1062, 1084 (9th Cir. 2013); Toguchi,

21    391 F.3d at 1057, 1059–61. Even if Dr. Smith committed medical malpractice in prescribing

22    venlafaxine, that malpractice does not become a constitutional deprivation just because Plaintiff is

23    a prisoner. See Estelle, 429 U.S. at 106.

24         Accordingly, for all the foregoing reasons, the undersigned recommends granting

25    summary judgment in Defendants' favor as to Plaintiff's claims against Dr. Smith.

26    / / /

27    / / /

28    / / /

**D.  Dr. Bobbala:**

   **1.  The Parties' Arguments:**

After Plaintiff was transferred to CSP-Sac, Dr. Wadell examined Plaintiff but told him that he could not prescribe medication like gabapentin because Dr. Bobbala routinely denies requests for non-formulary medications (of which gabapentin was one). Dr. Bobbala partially granted one of Plaintiff's grievances at the second level of review. Plaintiff had requested more effective medication such as gabapentin or Lyrica, as well as access to CDCR pain management procedures and the names of prison medical officers involved in pain management policy. Dr. Bobbala did not grant specific medication but granted access to pain management procedures and referred Plaintiff's case to the prison's pain management committee.

Plaintiff argues that Dr. Bobbala violated the Eighth Amendment because she had direct knowledge of and was deliberately indifferent to Plaintiff's serious chronic pain. See ECF No. 9 at 12–13, 17. Bobbala allegedly routinely denied most prescriptions for non-formulary pain medications. Id. at 12–13, 17. Bobbala's actions, in Plaintiff's view, were arbitrary and indiscriminate and precluded him from receiving effective treatment. Id. at 12–13, 17.

Defendants respond that Dr. Bobbala was not deliberately indifferent just because she followed policy regarding approved medications. ECF No. 111-3 at 10. Dr. Bobbala read Plaintiff's file when reviewing Plaintiff's grievance and determined that he received appropriate care. Id. She also referred Plaintiff's request for stronger medication to the review committee. Id.

Plaintiff opposes Defendants' interpretation of Dr. Bobbala's conduct. ECF No. 114 at 5–6. He argues that Dr. Bobbala is a physician and understood the effects of his medication. Id. at 5. Dr. Bobbala, in Plaintiff's view, understood the inadequacy of the treatment he had thus far received. Id. She is also CSP-Sac's Chief Medical Officer and chaired the committee in charge of reviewing requests for non-approved medications, including Plaintiff's own request for a stronger medication. Id. Plaintiff contends that there can thus be no argument that Dr. Bobbala was aware of Plaintiff's pain and can be liable for failing to prescribe an effective treatment. Id. Plaintiff argues that any order denying non-formulary medication is tantamount to personal involvement in his care. Id. at 6. The committee denied stronger medication. See ECF No. 104 at 62–63.

**2.   Analysis:**

Dr. Bobbala may not be held liable simply for reviewing and denying Plaintiff's grievance. But Plaintiff variously alleges that Dr. Bobbala is liable because she enforced CDCR policy prohibiting some non-formulary pain medication, she was personally and subjectively aware of Plaintiff's need for additional medication, she denied most requests for non-formulary medications, and her supervisory responsibilities made her a member of all "treatment teams" who had overseen Plaintiff's care. See ECF Nos. 9 at 13, 17; 104 at 6; 114 at 5–6; 115 at 7.

Yet, inasmuch as Plaintiff complains of Dr. Bobbala's polices or CDCR policies, he seems less concerned with some policy-based liability for Dr. Bobbala or the constitutionality of CDCR pain management policies themselves. See ECF Nos. 9 at 13, 17; 104 at 6; 114 at 5–6; 115 at 7. Plaintiff appears to be most aggrieved by Dr. Bobbala's alleged direct and personal involvement in his care, knowledge of his pain, and deliberate indifference in failing to grant him more effective treatment. See ECF Nos. 9 at 13, 17; 104 at 6; 114 at 5–6; 115 at 7. Plaintiff appears to both reject and allege supervisory liability. See ECF Nos. 9 at 13–14; 114 at 6.

Whichever theory of liability Plaintiff alleges is ultimately of no moment. The Court concludes that Defendants are entitled to summary judgment under any of Plaintiff's theories.

**i.   Dr. Bobbala's Actions in Reviewing Plaintiff's Grievances:**

As with Plaintiff's claims against Dr. Smith, insofar as Plaintiff seeks to hold Dr. Bobbala liable for her actions in reviewing Plaintiff's appeals of his grievances, he cannot. Dr. Bobbala's actions in reviewing grievances generally will not subject her to liability under § 1983. See, e.g., George, 507 F.3d at 609; Ramirez, 334 F.3d at 860; Hunter, 2020 WL 2935427, at *5; Arellano, 2018 WL 1083386, at *8.

Dr. Bobbala, of course, cannot simply ignore unconstitutional conduct of those beneath her.  See Jett, 439 F.3d at 1098 (stating that prison officials are deliberately indifferent when they knowingly fail to respond to inmates' requests for help); Taylor, 880 F.2d at 1045; Ford, 2019 WL 2613426, at *3. If Dr. Bobbala failed to assist Plaintiff even though she could prevent an ongoing constitutional violation (e.g., an ongoing violation of Plaintiff's right to adequate medical care), she could be subject to liability. See Jett, 439 F.3d at 1098; Ford, 2019 WL 2613426, at *3.

1   But Plaintiff's blanket and conclusory assertions that Dr. Bobbala is a physician and *knew* that the

2   underlying treatment he was receiving was constitutionally inadequate do not establish any

3   constitutional violation that Dr. Bobbala knew that she was required to remedy.

4        In any event, because there is no vicarious liability under § 1983, Plaintiff must

5   show that Dr. Bobbala was personally involved in Plaintiff's care—the alleged root of Plaintiff's

6   constitutional claims. See Ashcroft, 556 U.S. at 676–77; Jones, 297 F.3d at 934. Ruling against

7   Plaintiff on a grievance, however, does not constitute personal involvement for the purposes of the

8   alleged constitutional violation. George, 507 F.3d at 609; Hunter, 2020 WL 2935427, at *5.

9                          **ii.  Dr. Bobbala's Direct Liability:**

10       Plaintiff generally does not dispute the factual substance of Dr. Bobbala's

11  affirmative actions. See, e.g., ECF Nos. 114 at 5–6; 115 at 6–7. Namely, that Dr. Bobbala reviewed

12  the grievance that Plaintiff filed after transferring to CSP-Sac. See, e.g., ECF Nos. 114 at 5–6; 115

13  at 6–7; see also ECF No. at 111-4 at 90. Dr. Bobbala did not grant Plaintiff specific medications

14  such as gabapentin but referred Plaintiff's case to the pain management committee.[15] See ECF Nos.

15  at 111-4 at 90; 115 at 6–7. Dr. Bobbala noted Plaintiff's treatment history. See ECF Nos. at 111-4

16  at 90; 115 at 6–7. She noted that Plaintiff had undergone regular exams, received regular

17  medication, that his primary care physicians continued to adjust his medications to manage his pain,

18  and that a referral to physical therapy was pending scheduling. See ECF Nos. at 111-4 at 90; 115

19  at 6–7. Dr. Bobbala also noted that, since Plaintiff had filed his grievance, Plaintiff had been

20  prescribed ibuprofen. See ECF Nos. at 111-4 at 90; 115 at 6–7. She granted access to CDCR pain

21  management policies. See ECF Nos. at 111-4 at 90; 115 at 6–7.

22       Defendants have accordingly carried their initial burden of showing the absence of

23  any genuine dispute of fact materially going to Dr. Bobbala's knowledge and treatment of

24  Plaintiff's pain. The burden is therefore upon Plaintiff to submit sufficient evidence at the summary

25  judgment stage to create a genuine issue of material fact with respect to his claim that Dr. Bobbala

26  violated his rights under the Eighth Amendment. Drawing all reasonable inferences from Plaintiff's

27

28  ---
[15] Defendants do not anywhere appear to dispute that the committee later denied stronger medication. See ECF No. 104 at 62–63; see also generally ECF Nos. 111-3; 111-4; 116.

1    submissions, the Court concludes that Plaintiff has not done so.

2           Plaintiff attempts to make a genuine dispute over Dr. Bobbala's knowledge of the

3    inadequacy of his treatment. He contends that, because Dr. Bobbala is a physician, she necessarily

4    knew of Plaintiff's pain and that the care Plaintiff received was constitutionally insufficient. ECF

5    No. 5 at 14. There is no question that Dr. Bobbala was aware of Plaintiff's pain. See, e.g., ECF

6    Nos. 111-3 at 10; 111-4 at 5, 90–91. But Plaintiff, other than sweeping, standalone allegations,

7    submits nothing to indicate that Dr. Bobbala had some deeper, subjective knowledge of an

8    insufficiency of care. Those conclusory allegations do not establish a dispute of material fact.

9           Plaintiff also alleges that Dr. Bobbala personally participated in his care by

10   reviewing his grievances and chairing the pain management committee that denied stronger

11   medication. ECF No. 114 at 6. He also alleges that Dr. Bobbala's supervisory duties made her a

12   member of all "treatment teams" who had overseen Plaintiff's care. See ECF No. 115 at 7. Because

13   Plaintiff admits, however, that Dr. Bobbala's affirmative conduct was limited to grievance review

14   and involvement in the pain management committee, there is no dispute that Dr. Bobbala was not

15   directly or personally involved in Plaintiff's primary level care.

16          The Court has stated the law regarding the participatory requirements for personal

17   liability. Direct liability necessitates personal involvement. See Ashcroft, 556 U.S. at 676–77;

18   Jones, 297 F.3d at 934; Taylor, 880 F.2d at 1045. Because Dr. Bobbala was not personally involved

19   in any of Plaintiff's care—or, more specifically, its alleged deficiency—she cannot be directly

20   liable for any constitutional violation resulting from it. See Ashcroft, 556 U.S. at 676–77; Jones,

21   297 F.3d at 934; Taylor, 880 F.2d at 1045.

22          Even Dr. Bobbala can somehow be seen as personally and directly involved in

23   Plaintiff's care, based on the undisputed facts before the Court, she was not deliberately indifferent.

24   Dr. Bobbala must have both been aware of Plaintiff's serious pain and then she must have

25   disregarded that pain. See, e.g., Farmer, 511 U.S. at 837; Jett, 439 F.3d at 1096; Toguchi, 391 F.3d

26   at 1057. The Court's analysis, as ever, focuses on what Dr. Bobbala's mental attitude actually was.

27   See Farmer, 511 U.S. at 835–37. Plaintiff must show, on Dr. Bobbala's part, an interference in

28   Plaintiff's care or a purposeful act or failure to respond to Plaintiff's pain, and harm caused by that

1    indifference. E.g., Colwell, 763 F.3d at 1066; Jett, 439 F.3d at 1091, 1096.

2            Again, there is no dispute that Dr. Bobbala knew of Plaintiff's pain. But she could

3    have reasonably concluded that his treatment was constitutionally adequate and that his pain, even

4    if present, did not pose an ongoing, excessive risk to Plaintiff's health.[16] Dr. Bobbala noted that

5    Plaintiff had undergone regular medical exams, that his primary care physicians continued to adjust

6    medication to address his pain, that Plaintiff had been prescribed additional ibuprofen, and that

7    Plaintiff's physical therapy appointment was pending. See ECF Nos. at 111-4 at 90; 115 at 6–7.

8    Even if Dr. Bobbala should have been aware from these facts that a serious risk to Plaintiff's health

9    remained, but was not in fact aware of such risk, then she did not violate the Eighth Amendment.

10   See, e.g., Toguchi, 391 F.3d at 1057, 1060. Moreover, although Dr. Bobbala did not grant Plaintiff's

11   request for stronger medication, she did not interfere with or otherwise prevent treatment. Indeed,

12   she further referred Plaintiff's request for additional medication to the pain management committee.

13   See ECF Nos. at 111-4 at 90; 115 at 6–7

14           Plaintiff has at best established a difference of opinion with Dr. Bobbala over proper

---

[16] As noted, Plaintiff is entitled to reasonable care, but he is not entitled to any specific type of care he might prefer, or even the best available care. E.g., Forbes, 112 F.3d at 266–67; Thornberry, 2019 WL 3302404, at *2–3; see also Toguchi, 391 F.3d at 1058 (holding that a doctor was not deliberately indifferent for prescribing an inmate alternative medication). Prison physicians cannot simply disregard inmates' pain, but neither medical treatment nor the Eighth Amendment guarantee a complete absence of pain. Thornberry, 2019 WL 3302404, at *2–3. Not because prison officials may leave inmates in pain, but because no doctor is a guarantor of a pain-free life. See id.; Oden v. Cambra, No. C 97–3898 SI (PR); 1999 WL 183611, at *11 (N.D. Cal. Mar. 30, 1999) ("doctors (inside and outside of prisons) are not guarantors of pain-free living for their patients. There may be conditions . . . that will result in some pain regardless of what a doctor does"); see also Ajuria-Ramos v. Ramadan, No. 1:19-cv-00280-JLT (PC), 2019 WL 2009309, at *3 (E.D. Cal. May 7, 2019). For Eighth Amendment claims arising in the context of medical care, inmates must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. The Court has already noted that an inmate must show both an objective serious medical need and a defendant's subjective deliberate indifference. Colwell, 763 F.3d at 1066. An official must know and disregard a serious risk to an inmate's health. Id. Officials must be aware of facts from which they can draw the inference that a substantial risk of serious harm exists, and they must also draw the inference. See, e.g., Colwell, 763 F.3d at 1066; Toguchi, 391 F.3d at 1057.

Undoubtedly, Plaintiff's underlying pain is a serious medical need. And there is no dispute that Plaintiff continued to experience some pain after his various treatments. But the Court concludes that Plaintiff has not shown deliberate indifference. Plaintiff received constitutionally satisfactory care after his transfer to CSP-Sac. He has not shown, for example, that prison officials knowingly denied or delayed, or intentionally interfered with medical treatment, or that any official otherwise improperly provided medical care. E.g., Colwell, 763 F.3d at 1066; Jett, 439 F.3d at 1096; see ECF No. 111-4 (listing some of the medical care Plaintiff received, including medication to manage his pain, exams, a physical therapy referral, lab work). The Court does note a gap between the time Plaintiff filed a sick call slip on December 25, 2016, and the time he saw Dr. Wadell on February 2, 2017. See ECF No. 111-4 at 4, 75, 78. Plaintiff filed a grievance on January 3, 2017 because of that delay. See ECF No. 111-4 at 4, 80–82. Although delays in medical care can establish an Eighth Amendment violation, Plaintiff has not shown that any official possessed a sufficiently culpable state of mind establishing a constitutional violation. Cf. Jett, 439 F.3d at 1096–98.

treatment. A difference of opinion between Dr. Bobbala and Plaintiff does not establish any constitutional issue. See, e.g., Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242; Hendon, 528 F.Supp.2d at 1065. None of Plaintiff's conclusory allegations that denying certain medication was improper establish that Dr. Bobbala's conduct was medically unacceptable under the circumstances. Nor does Plaintiff establish that Dr. Bobbala chose (or, rather, permitted to continue) some unacceptable course of treatment in conscious disregard of excessive risk to Plaintiff's health. Plaintiff must show both to show that his differences with Dr. Bobbala rose to the level of deliberate indifference. See, e.g., Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

### iii.   Dr. Bobbala's Supervisory Liability:

Whether Plaintiff truly alleges supervisory liability on Dr. Bobbala's part is unclear. Regardless, Dr. Bobbala is not liable in a supervisory capacity. Under § 1983, supervisory officials may not be held liable for subordinates' unconstitutional conduct under a theory of respondeat superior. Ashcroft, 556 U.S. at 676. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Henry A. v. Willden, 678 F.3d 991, 1003–04 (9th Cir. 2012); Quiroz v. Horel, 85 F. Supp. 3d 1115, 1149–50 (N.D. Cal. 2015).

Hence, to hold a supervisor officer liable, a plaintiff must allege facts showing that the supervisory defendant: (1) personally participated in or directed the alleged violations; (2) knew of the alleged violations and failed to prevent them; or (3) promulgated or implemented a policy so deficient that the policy itself repudiates constitutional rights and is the essential thrust of the constitutional violation. See, e.g., Willden, 678 F.3d at 1003–04; Quiroz, F. Supp. 3d at 1149–50; see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); Castle v. Lugo, No. CV 19-00374-JVS (JDE), 2020 WL 4355305, at *11 (C.D. Cal. May 15, 2020). Under the policy-based theory, liability may exist even without the supervisor's overt personal participation in the constitutional violation. E.g., Crowley, 734 F.2d at 977.

It is, however, insufficient for a plaintiff simply to allege that supervisors knew

about the constitutional violation and that they generally created policies and procedures that led to the violation. Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012). An inmate plaintiff must allege "a specific policy" or "a specific event" that the supervisor instigated that led to the constitutional violations. Id. An inmate must also show that a supervisor had the requisite state of mind to establish liability. See OSU Student Alliance v. Ray, 699 F.3d 1053, 1071 (9th Cir. 2012); see also Starr, 652 F.3d at 1207; Quiroz, 85 F. Supp. 3d at 1149. The state of mind question turns on the state of mind required by a given underlying claim. See OSU Student Alliance, 699 F.3d at 1071; Starr, 652 F.3d at 1207; Quiroz, 85 F. Supp. 3d at 1149–50. Needless to say, the state of mind requirement here is deliberate indifference. See OSU Student Alliance, 699 F.3d at 1071; see also Toguchi, 391 F.3d at 1057 (discussing the deliberate indifference standard for Eighth Amendment claims).

First and foremost, Plaintiff has not established any constitutional violation. The medical care that Plaintiff received was not unconstitutionally lacking.[17] There is thus no underlying violation for Dr. Bobbala to have personally committed, directed, or which resulted from a policy Dr. Bobbala implemented, such that she would be liable. See, e.g., Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); see also Ortega v. Ritchie, 708 F. App'x 446, 447 (9th Cir. 2018) (citing Corales for the proposition that supervisory liability requires an anchoring constitutional depravation). Moreover, the Court has already concluded that Dr. Bobbala was not deliberately indifferent to Plaintiff's serious medical needs. Plaintiff has not established the requisite state of mind for supervisory liability to attach.

The undersigned recommends granting summary judgment as to Dr. Bobbala.

**E. Dr. Bal:**

**1. The Parties' Arguments:**

When Plaintiff saw Dr. Wadell, he allegedly told Plaintiff that Dr. Bal had authored CDCR's policies limiting prescription of medications like gabapentin. ECF No. 9 at 13. Dr. Felder allegedly told Plaintiff that he had no authority to alter the policies, and that Plaintiff would have to take it up with Dr. Bal. Id. at 15. Because of Dr. Bal's alleged authorship of the pain management policies, Plaintiff contends that he has been denied access to medication effectively treating his

---

[17] See, e.g., supra note 16.

1  pain. Id. at 18–19. Plaintiff contends that Dr. Bal's conduct constitutes deliberate indifference to

2  his serious medical needs. Id. at 19.

3        Defendants move for summary judgment, arguing that Plaintiff has never spoken

4  with or met Dr. Bal. ECF No. 111-3 at 11. Defendants contend that Plaintiff does not actually argue

5  that Dr. Bal failed to provide Plaintiff with medical care or is responsible for ratifying subordinates'

6  unconstitutional violations of policy. Id. Plaintiff admits that he does not know who developed

7  CDCR's policies controlling prescription of drugs. Id. And Plaintiff admits that he received

8  gabapentin after the policy went into effect. Id. His claims that Dr. Bal prevented him from getting

9  his preferred effective medication are thus not supported by the record, which actually indicates

10  that Plaintiff received gabapentin for several years after its removal from the list of generally

11  approved medications. Id. at 12. Plaintiff's allegations that Dr. Bal is responsible for medical

12  policies, standing alone, do not support a claim of supervisory liability. Id.

13        Plaintiff does not extensively discuss Dr. Bal in his opposition brief. ECF No. 114.

14  But Plaintiff alleges that CDCR's policies limiting certain prescription drugs erect impermissible

15  obstacles to treatment. See, e.g., id. at 5–6. He contends that Dr. Bal's involvement in establishing

16  CDCR's prescription medication policies establishes her direct, personal involvement in his care.[18]

17  Id. at 6.

18        Defendants reply that the record indicates that Dr. Bal was not involved in Plaintiff's

19  care. ECF No. 117 at 7. Nothing illustrates Dr. Bal was aware of any change in Plaintiff's care. Id.

20  Plaintiff's sweeping allegations that Dr. Bal is responsible does not state a claim of supervisory

21  liability. Id. Plaintiff's claims are essentially that Dr. Bal is responsible for all subordinate actions,

22  which is insufficient. Id. There is no respondeat superior liability under § 1983. Id. Supervisors

23  may only be liable if they were personally involved in a constitutional deprivation. Id.

24  ///

25

26  [18] Plaintiff claims in his motion for summary judgment that Dr. Bal is responsible, as Deputy Medical Executive for
Field Operations (North), for promulgating policies and that her medical degree makes her responsible for the
consequences of those policies. ECF No. 104 at 7. Plaintiff contends that it is irrelevant that Dr. Bal did not know him
27  because her policies discontinuing gabapentin prescriptions weakened his care. Id. at 7–8. Her policies, in Plaintiff's
view, give impermissible deference to prison administrative concerns rather than primary care physicians' decisions.
28  Id. Because Dr. Bal is a physician, her reckless attitude to inmate care made her deliberately indifference. Id.

1          **2.  Analysis:**

2              There is no genuine dispute over any material fact regarding Dr. Bal's conduct.

3   Plaintiff argues that Dr. Bal's responsibility for the policies that limited his access to medications

4   like gabapentin is tantamount to direct, personal involvement in his care. See, e.g., 114 at 6. But he

5   admits that Dr. Bal had no ground-level, primary involvement in his treatment. See id.; ECF Nos.

6   9 at 13, 18–19; 104 at 8; 115 at 7. Plaintiff admits (or at least does not challenge) that he has never

7   met or spoken with Dr. Bal, and that she never made an individualized decision about his care. ECF

8   Nos. 104 at 8; 115 at 7. Plaintiff further argues that, because Dr. Bal is a physician, she definitively

9   knew that CDCR's pain management policies led to inadequate medical care for inmates. See, e.g.,

10  ECF Nos. 104 at 7–8; 114 at 6. He offers no evidence in support. Moreover, the Court has deemed

11  Plaintiff to have admitted the Plaintiff does not actually know who developed CDCR's prescription

12  drug policies. See, e.g., ECF No. 115 at 7. Plaintiff variously alleges that Dr. Bal is responsible for

13  the policies but offers no evidence to show that she is. ECF Nos. 9 at 13, 18–19; 104 at 7–8; 114 at

14  6. In the first instance, then, Defendants have carried their initial burden of showing the absence of

15  a genuine dispute of material fact requiring resolution at trial. However, Plaintiff has not carried

16  his burden of proving that there is a genuine issue of material fact sufficient to overcome summary

17  judgement here.

18              Nevertheless, Defendants do not sufficiently credit the basis of Plaintiff's claims

19  against Dr. Bal. See ECF Nos. 111-3 at 12; 116 at 7. Defendants' motion for summary judgment

20  (and their reply to Plaintiff's opposition) focuses primarily on Dr. Bal's lack of personal

21  involvement in Plaintiff's care. See ECF Nos. 111-3 at 12; 116 at 7. Although Defendants recognize

22  Plaintiff's supervisory claims, they assert that he has made only generic claims of her policy-based

23  responsibilities. See ECF Nos. 111-3 at 12; 116 at 7. This is not entirely true. To be sure, most of

24  Plaintiff's claims are generic, sweeping, and left to stand on their own. E.g., ECF Nos. 9 at 13, 18–

25  19; 114 at 6. But Plaintiff's asserts specific policies for which Dr. Bal is allegedly responsibly and

26  from which his allegedly substandard care largely extends; namely, the formulary drug policies

27  limiting certain medications. E.g., ECF Nos. 9 at 13, 18–19; 104 at 7; 114 at 6.

28              Plaintiff's claims of supervisory liability against Dr. Bal still fail. There is no dispute

that CDCR officials variously denied Plaintiff's requests for specific medication like gabapentin and Lyrica. See, e.g., ECF 111-4 at 70, 88. But even drawing all reasonable inferences in Plaintiff's favor and assuming that those denials were the direct result of CDCR's prescription drug policies,[19] and assuming Dr. Bal is responsible for those policies,  Plaintiff's claims are still deficient. For all the reasons already discussed, Plaintiff has not stated an underlying constitutional violation. He has not shown that he received constitutionally deficient care. And Plaintiff has not shown that any prescription drug policy Dr. Bal enforced or promulgated is so repugnant to his constitutional rights that Dr. Bal can be held liable in her supervisory capacity without overt personal participation in a constitutional violation. There is no supervisory liability without an underlying constitutional violation. See Corales, 567 F.3d at 570; Ortega, 708 F. App'x at 447; see also, e.g., City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (discussing municipal liability but stating that if a plaintiff had not suffered an underlying constitutional, the issue of whether police department regulations authorized a violation is irrelevant); Whiting v. Dep't of Cal. Highway Patrol, No. EDCV 18-2652-CAS (JEM), 2020 WL 5753231, at *9 (C.D. Cal. Sept. 1, 2020); Hill v. Dir. of Corr., No. 2:11–cv–3409–EFB P, 2015 WL 641474, at *7 (E.D. Cal. Feb. 12, 2015).

## V. CONCLUSION

Based on the foregoing, the undersigned United States Magistrate Judge recommends that Defendant's motion for summary judgment (ECF No. 111) be **GRANTED**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[19] Defendants (and the submitted evidence) suggest that CDCR's limitations on some prescription drugs like gabapentin are at least part of the reason that prison physicians denied Plaintiff's suggested medications like gabapentin or Lyrica. See, e.g., ECF Nos. 111-3 at 12; 111-4 at 70–71; 116 at 12.

1           These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after

3   being served with these findings and recommendations, any party may file written objections with

4   the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure

5   to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951

6   F.2d 1153 (9th Cir. 1991).

7

8   Dated:  March 11, 2021

9                                            _____

10                          DENNIS M. COTA
                       UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28